THE STATE, EX REL. LEHNER, *v.* SULLIVAN, AUD.

(No. 4239—Decided January 16, 1952.)

*Messrs. Herberich, Rowley & Taylor,* for plaintiff.
*Mr. Alan D. Sophrin,* city solicitor, for defendant.

DOYLE, J. This is an action in mandamus, brought originally in this court, in which the plaintiff asks for an order against the auditor of the city of Cuyahoga Falls, Ohio, requiring him to issue a salary voucher to the relator herein, in payment of claimed salary for the office of director of public safety of the city, for a

period of time during which the relator was on "leave of absence" from his official duties.

There is little dispute in the facts, and none of consequence in relation to those facts which must control the judgment to be here entered.

■ Relator, Frank C. Lehner, was, on January 1, 1950, appointed to the office of director of public safety of the city of Cuyahoga Falls, Ohio, under authority of Section 4367, General Code.

■ On June 10, 1950, he directed a letter to the mayor of the city (the appointing authority), in which he described certain public "charges and countercharges" resulting from his investigation and activities in connection with vice conditions in the city. He stated: "by the trend and nature of the tactics employed by this known gambler and his associate, and with their deliberate attempt to smear and damage my personal reputation, as well as the city of Cuyahoga Falls, I feel that pending this litigation * * * I should be relieved of my duties as safety director until such time as the true and honest facts are developed by my attorney." The letter continued by relating his official work against vice conditions, and then concluded as follows: "In the interest of the public, until the true facts are known, I respectfully and sincerely request that I be relieved of my duties in order that I may give my full time to making the true facts known."

■ On the same day—June 10, 1950—the mayor responded as follows: "I concede in your wishes to relieve you of your duties as safety director of the city of Cuyahoga Falls, temporarily. The acceptance of your request does not in any way infer misconduct on your part. On the contrary, and after a personal survey, it is my opinion that you have done a difficult task well. * * * I shall assume your duties, temporarily, until you have had the opportunity to bring out the

truths in your antigambling campaign.''

■ On December 28, 1950, the mayor wrote the relator as follows: ''The outcome of the recent trials has certainly vindicated you of any influence of misconduct. I have always retained confidence and respect for your administration of the office of safety director. We are coming into a new year. I have been happy to 'carry on' while you have been on 'leave.' However, it is my personal wish that I be informed of your intentions to return on a more active status. If you wish more time, I shall, of course, grant a reasonable extension. What are your wishes in the matter? Please advise me as early as possible as to your intentions.''

■ On December 30, 1950, the relator replied to the letter of the mayor. He expressed appreciation for the ''leave of absence'' and asked for an additional 30-day leave. The ''leave'' was granted.

■ On February 7, 1951, the relator, not having resumed his duties at any time, sent to the mayor a formal notice of resignation, which, on the following day, was formally accepted.

■ On June 18, 1951, the relator, through counsel, demanded payment of his salary from June 10, 1950, to February 8, 1951.

It appears to be factually established that: if the relator is entitled to be paid, it should be in the amount of $1,391.24, as fixed by municipal law; the city auditor is authorized to issue warrants for the salaries of department heads, including that of safety director, with the countersignature of the city treasurer; relator's bond was not cancelled until the acceptance of his resignation on February 8, 1951; during the period for which salary is demanded, no one was appointed to perform the duties of director of public safety, and no salary for the office was paid to anyone; and whatever work was performed in this connection ap-

parently was done by the appointing authority—the mayor himself.

As heretofore noted, the action before us is in mandamus. On the authority of *State, ex rel. Clinger, Pros. Atty.,* v. *White et al., County Commrs.,* 143 Ohio St., 175, 54 N. E. (2d), 308, we entertain the case on its merits:

The office of director of public safety in the city of Cuyahoga Falls is a public office, and the holder thereof is a public officer. The salary, legislated by council to be paid the office, is fixed in amount.

We do not disagree with the following general principle:

"* * * The right to the compensation attached to a public office is an incident to the title to the office and not to the exercise of the functions of the office; * * * the fact that officers have not performed the duties of the office does not deprive them of the right to compensation, provided their conduct does not amount to an abandonment of the office." 46 Corpus Juris, Officers, Section 233.

See, also, 67 Corpus Juris Secundum, Officers, Section 83; 43 American Jurisprudence, Public Officers, Section 379.

However, as shown above in the statement of facts, the relator voluntarily withdrew from his official functions, for reasons that were entirely personal to him. His subsequent conduct amounted to, in fact, a permanent relinquishment of his office through his formal resignation at the end of the term of the "leave of absence."

Under these circumstances, we recognize an exception to the general requirement for payment of the salary of a public officer, and we agree with the late decision (1945) of the Court of Appeals of New York in a similar case. The court said:

"As matter of conceded fact, the withdrawal by the

plaintiff from his official functions was at his own request and for reasons that were entirely his own. It is not possible to read into that arrangement a stipulation that the payments theretofore made to the plaintiff from public moneys would be kept up for the duration of such outright relinquishment by him of his office. Whatever right he had during that intermission was manifestly not a right to salary.'' *Hirschberg* v. *City of New York*, 294 N. Y., 55, 60 N. E. (2d), 539.

*Judgment for the defendant.*

HUNSICKER, P. J., and STEVENS, J., concur.